## HARSEY v. BUSBY.

FRAUD.—FINDING that defendant should be allowed credit on his purchase money notes for deficiency in acreage of land sold, because the tract did not contain as much as represented, affirmed.
Mr. JUSTICE GARY dissents.

Before FRANK B. GARY, special J., Lexington, October, 1903. Affirmed.

Action by A. A. Harsey against D. B. Busby. The following is the Circuit decree:

"This is an action to foreclose a mortgage of certain real estate fully described in the complaint herein. The mortgage was executed to secure the payment of two notes, given on the 17th day of November, 1900, in the sum of $150 each. The notes are a part of the purchase price of a tract of land sold to the defendant by the plaintiff. The complaint is in the usual form of a complaint for the foreclosure of a mortgage of real estate.

"The answer of the defendant admits the execution of the notes and the mortgage. It denied a demand for the payment of the two notes, and denied that the plaintiff is the legal owner of the two notes and mortgage, or that he is entitled to the payment thereof.

"The answer also sets up a defense to the action to the effect that the notes were given in part payment of a tract of land sold by the plaintiff to the defendant. That the plaintiff represented to the defendant that the tract contained 160 acres. That defendant had no opportunity to make an examination for himself and relied upon the representations made by the plaintiff that the land embraced 160 acres. That the price agreed upon was $5 per acre, making a total of $800. That a plat was presented by the plaintiff and attached to his deed, and was referred to in said deed as a delineation of the land, and thereon represented it as containing 160 acres. That he took title to the property solely upon the representations, and paid therefor the sum of $500, and gave the notes and mortgage in suit for the balance of the purchase price. That the representations were not correct either as to boundaries or quantity. That the land was short sixty acres. That there was no valid contract for the notes and mortgage. That the notes were obtained through fraud and deceit. That the plaintiff and defendant agreed to a resurvey, and that the number of acres found to be in the tract should be paid for at $5 per acre.

"It seems to me that the question as to whether or not the defendant is entitled to the relief he asks for, depends upon the nature of the contract of purchase. Although we have

before us a mass of testimony in the shape of correspondence between the parties after the alleged discovery of the shortage, I think the germane testimony is such as will throw light upon the nature of the purchase.

"I have been cited to no authorities by either of the counsel in the case. But by such limited investigation as I have been able to make, I regard the law as well settled that 'as a general principle, where lands are sold by the acre, the purchaser cannot be made to pay for more acres than the tract contains, or where lands are sold by any special description to such extent that a failure in that respect would amount to a misrepresentation on the part of the vendor, an abatement will usually be allowed, in accordance with the facts. But where it sold as a whole, in gross, and under the name by which it is known as a certain tract, though the number of acres in the general description is mentioned, yet accompanied with the words "more or less," an abatement will not be allowed, as a matter of course, because there is a deficiency in the quantity afterwards ascertained. On the contrary, abatement will be refused ordinarily. To this, however, there are exceptions, as in the case of a very gross deficiency.' *Douthit* v. *Hipp*, 23 S. C., 208. In the case of *the Commissioner in Equity* v. *W. Thompson*, 4 McCord, 434, it is said: 'If the deficiency had been so great as to have amounted to a failure of consideration, or to have defeated the great object of the purchaser, or to have furnished clear and satisfactory evidence of a total mistake of the character in the land, I think the defendant would have been entitled to relief.' That is the law as I understand it. What are the facts? In the negotiation between the plaintiff and the defendant leading up to the purchase, the plaintiff wrote down his first proposition, as is shown by the testimony of the defendant, *which testimony is uncontradicted.* He says: 'I came along the road and saw him (the plaintiff) at his house. He stated to me that the tract of land lying around his house was for sale * * * and I asked him to give me his lowest terms in writing on a piece of paper I had, stating the num-

ber of acres, etc.   He wrote his name on this piece of paper
which I hold in my hand (Ex. F).   The part of the exhibit,
"A. A. Harsey wrote 150 acres, 35 cultivation, * * *
$900," is in his, A. A. Harsey's, handwriting.   The $100
rent, $500 cash and the $400 on time at four per cent., my
handwriting at his dictation.   I never had time to see the
land—I had to get on to Monetta * * * 'He said $800, with
$500 cash, with the rest on time, was his terms.   I said,
now, gentlemen, I have not time to look at your lands.   This
thing having been precipitated upon me—you must be care-
ful in your statements as to what is there, as I will have to
rely on your statement.   He (Harsey) stated he had 160
acres of land just as he had shown me * * * I told him,
"you stated to 150 acres before."   He said he was mis-
taken, that it should have been 160 acres, and brought Col.
Knotts' plat, which I hold in my hand * * *.'   The receipt
for the cash payment reads as follows: 'Received of D. B.
Busby $225, in part payment of a tract of land in Lexington
County containing 160 acres (more or less), bounded by
lands of the estate of Samuel Harsey, N. E. Busby, Amos R.
Spires * * * and probably others' * * * The plat calling
for 160 acres above referred to, is attached to the deed which
conveys 160 acres, more or less.   Of this plat, which was
exhibited during the negotiations to show the amount of
land, and which was attached to the deed, Col. Knotts, who
made it, said: 'I never surveyed the swamp land and don't
know to-day how much there is in the swamp * * *.   I
mean by a survey—going the lines, measuring them and
taking the bearings.   *I made an estimate by knowing what
was on the hill.'*   There is now no question but that the land,
instead of being 160 acres, is less than 100 acres—nearly
one-half short.   Nor is there any question that the defend-
ant did not receive the land within the lines and corners indi-
cated on the plat.   It is admitted by Col. Knotts, who fully
represented the plaintiff, that so much as is contained in the
triangle, B. C. D., did not go to the defendant, notwithstand-

ing it is included in the 160 acres delineated on the plat.
How much this is, does not appear.

"The law is, where land is sold by any special description,
to such an extent as that a failure in that respect would
amount to a misrepresentation on the part of the vendor, an
abatement will usually be allowed in accordance with the
facts.   And an abatement will be allowed in the case of a
gross deficiency.

"It seems to me that the facts of this case brings it clearly
within the purview of the law, which permits, or compels,
an abatement.

"Plaintiff's attorneys say: 'That even if this be true, the
deficiency was in swamp land, and that the abatement should
be for the value of the swamp land.'

"A sufficient answer to this is that the defendant pur-
chased one hundred and sixty acres of land.   He got less
than one hundred acres.   It is impossible to say what char-
acter of land is missing.   It is not in evidence at all.

"It is, therefore, ordered, adjudged and decreed, that the
complaint herein be dismissed with costs.

"This is without prejudice to the right of the plaintiff to
bring his action for recission of the contract on the ground
of mistake, if he be so advised.   I would order a cancellation
of the deed upon the refunding to the defendant of the cash
payment of $500, but I am not informed as to whether or not
valuable improvements have been placed upon the land."

The plaintiff appealed on following exceptions:

"1. For that his Honor erred in holding that 'it was im-
possible to say what character of land is missing.   It is not
in evidence at all,' when it is respectfully submitted that the
uncontradicted testimony of Col. Knotts shows that the
shortage in acres was swamp land, and that said swamp
land was not worth over one dollar per acre.

"2. For that he erred in not holding that the testimony
showed that there was only a shortage of sixty-two acres
of land, and the missing land is known as what is called

'swamp land,' and was only worth $1 per acre, and that the defendant was only entitled to an abatement of $62.

"3. For that he erred in not holding that as soon as it was ascertained that there was a shortage in number of acres, that Col. Knotts, the agent of plaintiff, offered to pay to defendant the cash money he paid plaintiff, with interest thereon from the date of said payment, provided the defendant would reconvey the premises to the plaintiff, or some other person for him, and that the defendant refused so to do.

"4. For that he erred in not holding that plaintiff was entitled to a judgment of foreclosure against the defendant *for at least* two and thirty-eight dollars, with interest thereon from the      day of      under the testimony of the case.

"5. For that he erred in dismissing the complaint when the preponderance of the testimony in the case showed that defendant was clearly indebted to plaintiff for at least two hundred and thirty-eight dollars, with interest thereon.

"6. For that he erred in holding, 'I would order a cancellation of the deed upon the refunding to the defendant of the cash payment of five hundred dollars, but as I am not informed as to whether or not valuable improvements have been placed upon the land;' and in dismissing the complaint, when it is respectfully submitted that it was not the duty of the plaintiff to show that no improvements had been placed on the land; and if after having found it was the duty of the plaintiff, or the defendant, to show whether improvements had, or had not, been placed upon said premises, then it is respectfully submitted that his Honor erred as a matter of law in not recommitting the case to the referee to take testimony upon said question.

"7. For that his Honor erred in holding that Col. Knotts never made a survey of the land, when the testimony of Col. Knotts and the defendant shows that Col. Knotts and the defendant, Busby, both made an actual survey of the land just before the commencement of this action, and Col. Knotts found upon said actual survey that said land only contained

98 1-4 acres, and Busby found a little less, and that the short-
age in acres was in the swamp."

*Messrs. T. C. Sturkie* and *G. T. Graham,* for appellant,
cite: *As to abatement:* 25 S. C., 208; 13 S. C., 209.

*Mr. J. Brooks Wingard,* contra, cites: *Defendant is en-
titled to relief because of misrepresentation:* 41 S. C., 509;
9 S. C., 287; 23 S. C., 208; 4 McC., 434; 9 Rich., 515; 2
Brev., 268; 1 McC., 126; 1 Bail., 128; 58 S. C., 477.

June 14, 1904.   The opinion of the Court was delivered
by

MR. JUSTICE JONES.   We are of the opinion that the de-
cree of the Court should be affirmed for the reasons therein
stated.   The contention of the appellant, that the deficiency
of acreage was in the swamp land, is not supported by the
testimony.   It is true, D. J. Knotts, a witness for the plain-
tiff, testified: "In the survey, the shortage of the land fell
off in the swamp.   The swamp did not contain all the land
we thought it did."   But on cross-examination, at page 25,
"Case," Mr. Knotts testified: "I never surveyed the swamp
lands and don't know to-day how much land there is in the
swamp * * * I made an estimate by knowing what was on
the hill."   The land was sold to defendant, Busby, on the
representation that it contained 160 acres, and a plat thereof
was delivered to defendant during the negotiations for sale
and subsequently attached to the deed of conveyance to
Busby.   This plat was made by D. J. Knotts as surveyor.
After the controversy arose, a resurvey was made, which
showed a deficiency of at least sixty-two acres.   Was the
deficiency in the swamp land?   It is manifest that Mr.
Knotts' statement that the deficiency was in the swamp land
goes for nothing, unless he knew how much swamp land the
tract was understood by the parties to contain when it was
sold, and how much swamp land was actually conveyed, as

shown by the resurvey. One must know the minuend and the subtrahend before undertaking to state the remainder.

Moreover, the Circuit Judge in his decree calls attention to a very significant fact, viz: that Mr. Knotts, who represented the plaintiff, admitted that so much of the tract as is contained in triangle B. C. D., on plat delivered to defendant, did not go to the defendant. How much this triangle contained, and whether it was swamp land or not, does not appear. The Circuit Court was clearly right in saying that it is impossible from the evidence to say what character of land is missing.

Furthermore, as tending to show the justice of the conclusion reached by the Circuit Court, the defendant, on page 9 of the brief, testifies: "I received another direct reply from Harsey, under date January 21, 1901, accepting the proposition I had made to him for a resurvey, and a reduction of $5 per acre for all land not there, in the shape of an indorsement on my notes. Letter offered in evidence, marked Ex. "V." Exhibit V. is not printed in the record, but in exhibit W., which is printed, Harsey writes: "All I want is for you to pay for what land you get * * * Please survey at once and let me hear from you, &c." At page 13 of the "Case," defendant, Busby, further testifieed as to the agreement by correspondence between him and Harsey, to the effect, that if there was a shortage, Harsey was to credit Busby's notes at $5 per acre for every acre short; and if there was an overplus, then Busby was to pay $5 per acre for every acre overplus. There is nothing in the record to show that Busby was mistaken in his view of the terms of agreement, which led to the resurvey to ascertain whether there was a deficiency.

The judgment of the Circuit Court should be affirmed.

Mr. Justice Gary *dissenting*. The facts of this case are fully set out in the decree of his Honor, the presiding Judge, which together with the exceptions will be reported. The pivotal question in this case is whether the testimony showed

that the deficiency in the number of acres was in the swamp lands, which were valued at one dollar per acre. The deficiency amounted to sixty-two acres.

In his decree, the presiding Judge uses this language: "Plaintiff's attorneys say * * * that the deficiency was in swamp land, and that the abatement should be for the value of the swamp land. A sufficient answer for this is that the defendant purchased one hundred and sixty acres of land. He got less than one hundred acres. It is impossible to say what character of land is missing. It is not in evidence at all." The appellant excepted to this finding. The presiding Judge, however, overlooked that portion of Col. D. J. Knotts' testimony relative to this fact, in which he says: "In the survey, the shortage of the land fell off in the swamp. The swamp did not contain all the land we thought it did. I told Mr. Busby that if he got 100 acres more of that land, it would not add anything to the value of his place. This is contained in some of the letters I wrote Mr. Busby and he has introduced." This witness also testified that he was satisfied the acreage of the uplands was all right. The foregoing testimony was introduced without objection. There are several reasons in addition to this testimony which tend to show that the defendant is only entitled to reduce the amount of the plaintiff's recovery by deducting from the sum claimed $62 (the value of the swamp land which was deficient), together with interest thereon from the time the deed was delivered.

In the first place, it is at least doubtful whether the lands were sold by the acre or by metes and bounds.

In the second place, the words, "more or less," were inserted in the receipt for part of the purchase money at the instance of the plaintiff. Then, again, when the deficiency in the land was discovered and the proposition was made to the defendant to reconvey the lands upon the return to him of the $500, which he had paid to the plaintiff, together with interest thereon, he took no steps to bring about such result. I am satisfied that the land is worth $800, it would, therefore,

be inequitable to allow the defendant to become the unemcumbered owner thereof without being required to pay more than $500 for it.

I am further satisfied that the defendant saw all except the swamp land before he completed the transaction relating to the land, and that he was not misled as to the boundaries thereof.

These, in brief, are the reasons for my dissent.